## Keesler License

*James T. Kitson,* for Commonwealth.
*Edwin Krawitz,* for appellant.

DAVIS, P. J., November 16, 1967.—Petitioner, Gary L. Keesler, has appealed from an order of the Secretary of Revenue suspending his motor vehicle operator's license, effective January 13, 1967, for a period of 75 days. It appears from the petition that, on August 13, 1966, before Justice of the Peace Anthony Fick of Moscow, Lackawanna County, Pa., he pleaded guilty and paid the fine and costs in the sum of $15 upon a charge of operating a tractor-trailer on Route 502, Springbrook Township, Lackawanna County, at a speed of 60 miles per hour in a 50 miles-per-hour zone, in violation of section 1002, subsec. (b), paragraph 6, of The Vehicle Code, of April 29, 1959, P. L. 58, 75 PS §1002. Subsequently, petitioner received an official notice, dated October 20, 1966, charging him with a six-point penalty and directing him to report on November 2, 1966, at a designated driver improvement school. He did not attend the school. Petitioner received a second official notice, dated January 3, 1967, charging him with an accumulated score of 11 points and imposing upon him a 75-day suspension of his license. Both notices referred to his initial offense as a violation of section 1002 (c). The case is before us for consideration of the Commonwealth's motion to quash the appeal, on the ground that Pennsylvania law does not permit an appeal to this court by one whose license has been suspended by the Secretary of Revenue where such suspension is a *mandatory,* as distinguished from a *discretionary,* act of the secretary. We need not rule upon the additional assertion that no appeal lies from the order to attend driver improvement school or from the assessment of points

by the secretary. Although these actions are necessarily related to the order of suspension as supporting factors, no appeal has been taken from them here as independent subjects of review.

So far as the statutory language may be controlling, it appears clearly that petitioner is given the right to maintain the instant appeal by section 620 of The Vehicle Code, as amended by the Act of August 6, 1963, P. L. 509, sec. 1, 75 PS §620:

"*Any person* whose operator's license or learner's permit has been *suspended,* or who has been deprived of the privilege of applying for an operator's license or learner's permit under the provisions of this act, shall have the right to file a petition, within thirty (30) days thereafter, for a hearing in the matter in the court of common pleas of the county in which the operator or permittee resides, other than in Allegheny County, and in Allegheny County, in the County Court of Allegheny County . . ." (Italics supplied.)

These provisions are equally applicable to suspension under the new point system, subsequently introduced into The Vehicle Code by the Act of January 24, 1966, P. L. (1965) 1497, sec. 2, 75 PS §§619.1 to 619.3, for section 73 of the Statutory Construction Act of May 28, 1937, P. L. 1019, art. V, 46 PS §573, provides:

"Whenever a section or part of a law is amended, the amendment shall be construed as merging into the original law, become a part thereof, and replace the part amended and *the remainder of the original law and the amendment shall be read together and viewed as one law passed at one time;* but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective". (Italics supplied.)

To support a contrary conclusion, the Commonwealth cites Brennan's Case, 344 Pa. 209, 211, 212, 25 A. 2d 155, 156 (1942). There, the Clerk of Courts of Northumberland County pursuant to a statutory duty imposed by section 1206(b) of The Vehicle Code, as amended by the Act of June 29, 1937, P. L. 2329, forwarded to the Secretary of Revenue his certificate showing that Thomas Brennan had entered a plea of nolo contendere to a charge of failing to stop at the scene of an accident. The secretary, pursuant to the duty imposed by section 614 of The Vehicle Code, as amended, forthwith *revoked* Brennan's operating privilege. Brennan appealed, citing section 616 (Act of May 1, 1929, P. L. 905, corresponding to section 620 of the present law) as authority. The Supreme Court reversed an order of the lower court rescinding the revocation, and Mr. Justice Parker said:

"It is plain that the legislature intended to confine the operation of §616 to those situations defined in the paragraph. There is a clear line of demarcation drawn by the code between suspension and revocation. For certain definite offenses the secretary is required to *revoke* the license without hearing and he is given no discretion; while in the case of suspension, a hearing is required and a certain amount of discretion is vested in the secretary. When we consider the arrangement of the act, the manner in which the different sections are titled, and the purpose of §616, it does not seem to be open to argument that the legislature did not intend to give a right of appeal in the case of a revocation of a license where the action of the secretary is mandatory".

Brennan recently was followed in Ullman Motor Vehicle Operator License Case, 204 Pa. Superior Ct. 145, 149, 152, 203 A. 2d 386, 388, 389 (1964). There, the offense certified to the secretary was operating a

motor vehicle while under the influence of intoxicating liquor. The lower court reversed the revocation of Ullman's license, but the Superior Court reversed this disposition and restored the order of revocation. Judge Woodside said:

"There is no possible reason for the court below to have sustained the appeal even if it has jurisdiction, which it does not. Ullman never questioned his conviction. Admitting the conviction, he had no standing to question the mere ministerial act of the Secretary in revoking his operator's license as the code requires . . .

"The act distinguishes throughout between a suspension and a revocation. The reference in §620 [corresponding to the earlier Section 616 relied upon in Brennan], supra, to licenses which have been 'suspended' and the omission of reference to licenses which have been 'revoked' leaves no doubt of the legislative intent. Here, it was an order *revoking* a license from which an appeal was attempted, not an order suspending the privilege of a person to apply for an operator's license which the secretary is authorized to issue under §619 of the Code. *The court below should have quashed the appeal*". (The italics last supplied are ours.)

Both Brennan and Ullman contain two elements: (1) A basic ruling that no appeal lies from an order of revocation because the legislature provided none; and (2) a rationalization of the legislative intention by pointing to the futility of appealing, even if permitted to do so, from an act of the secretary which is mandatory in character. The Commonwealth thesis would require us, by a reverse process, to reason that, since the point system calls for mandatory suspension in specified situations, therefore, the legislature did not intend to use the word "suspend", but really meant "revoke", and, therefore, failed to provide for a right of appeal from such orders. On the authority of Bren-

nan and Ullman, we might be persuaded to question the wisdom, but certainly not to challenge the power, of the legislature in providing appeals from mandatory suspensions by the secretary. Closer examination of the point system will show that the legislature acted wisely in extending the right of appeal to persons aggrieved by mandatory suspensions under the point system. In revocations, the certificate which triggers the secretary's mandatory duty represents proceedings which have already taken place *outside* of the scope of the secretary's jurisdiction, control and responsibility; but, in many suspensions under the point system, the mandatory duty to suspend will arise only as the result of functions performed by the secretary *within* the boundaries of his own authority and responsibility. The new system, in effect, makes the secretary chief scorekeeper in a gigantic game of points. If the game is to be played fairly, certificates of conviction from diverse sources must be charged against the individual, the score of points must be correctly computed, proper credits must be allowed, and the correct penalties must be assigned. On appeal, as before, the secretary, of course, cannot be required to correct errors made outside of his jurisdiction. This point is exhaustively illustrated by the Smith series of cases. Smith had been convicted of burglary in the Court of Quarter Sessions of Union County, on a plea of guilty. The clerk of courts certified the conviction to the secretary. Although the certificate did not show on its face that a motor vehicle had been used in the crime, the secretary forthwith revoked Smith's license. The lower court entertained an appeal and reversed the order of revocation. The Commonwealth appealed and the Superior Court reversed this disposition on the authority of Brennan and Ullman: Smith Motor Vehicle Operator License Case, 204 Pa. Superior Ct.

379, 385. Judge (now President Judge) Ervin, in a dissenting opinion, remarked:

"It is obvious that the Clerk of Courts of Union County did not make a certification that a motor vehicle was used in the commission of the burglary. Nevertheless, the Secretary of Revenue revoked the license of the defendant for a period of one year on the basis of the aforesaid document. I would hold that the aforesaid was not a proper certification as required by the act and that the secretary had no power to revoke the license in question".

Next, Smith filed a complaint in mandamus against the Secretary of Revenue in the Court of Common Pleas of Dauphin County: Smith v. Smith, 39 D. & C. 2d 406, 409, 410 (1966). The complaint was dismissed, and Judge Shelley said:

"Mandamus cannot be used to review or compel the undoing of action taken by an official in good faith and in the exercise of legitimate jurisdiction, even though, in fact, the decision rendered may have been wrong: Highway Paving Company v. Board of Arbitration of Claims, 407 Pa. 528 (1962).

"The certificate of the Clerk of Courts of Union County does not specifically set forth that a motor vehicle was used by plaintiff in the perpetration of the crime of burglary, to which he pleaded guilty. However, in the absence of proof to the contrary, the law presumes that a public official's actions were pursuant to proper authority and that the antecedent steps necessary to give validity to his official acts were duly taken: McIntosh Road Materials Co. v. Woolworth, Secretary of Property and Supplies, 365 Pa. 190, 211 (1950).

"The offense of burglary, to which plaintiff pleaded guilty, was committed in Union County, and the court of that county had exclusive jurisdiction. Plaintiff is asking this court to decide that the certification from

Union County was illegal, invalid, null and void. To do so would require this court to conjecture what facts appear in the record in Union County. As we do not have that record before us, it follows that we must conclude that the Court of Union County should determine whether or not, under all of the circumstances, there are the necessary facts to support the certification". .

Next, Smith returned to the Court of Quarter Sessions of Union County and petitioned the court to rescind the certificate. The court examined the record, determined that a motor vehicle *actually was used* in the crime, and dismissed the petition. Finally, Smith appealed to the Superior Court: Smith Motor Vehicle Operator License Case, 209 Pa. Superior Ct. 487, 229 A. 2d 18, 19, 20 (1967). The court affirmed the disposition by the lower court, and Judge Montgomery said:

"These provisions [section 1209 (b) of the Vehicle Code of 1959, P. L. 58, 75 PS §1209] do not require the certification to include a statement that a motor vehicle was involved. All that the clerk is required to do is to certify the judgment of conviction or acquittal. Therefore, we conclude that neither the indictment nor the certificate need state that fact. The question is purely one of the propriety of the action of the clerk in certifying the judgment against appellant to the Secretary of Revenue and the lower court has now decided that his action was proper".

In the instant case, the allegations of the petition suggest a possibility of error on the part of the Secretary of Revenue, and we think petitioner is entitled to maintain an appeal to determine the question.

ORDER

And now, November 16, 1967, the motion of the Commonwealth to quash the appeal is dismissed, and

the Commonwealth is granted leave to file an answer to the petition within 20 days.